UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO.: 2:20-cv-00310-JES-MRM

LOUIS MATTHEWS CLEMENTS,

     Plaintiff,

v.

APAX PARTNERS LLP; ANDREW
SILLITOE in his official capacity as
CO-CEO of APAX PARTNERS LLP;
MITCH TRUWIT in his official capacity
as CO-CEO of APAX PARTNERS LLP

     Defendants.

_____/

### DEFENDANT APAX PARTNERS LLP'S
### MOTION TO DISMISS FIFTH AMENDED COMPLAINT

     Defendant, APAX PARTNERS LLP ("Defendant" or "Apax"), moves to dismiss the Fifth

Amended Complaint [DE 84] pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(6), and Local Rule 3.01,

and in support states:

### INTRODUCTION

     In its March 16, 2021 Order of Dismissal [DE 82], this Court dismissed *with prejudice*

Plaintiff's claims against Attenti US, Inc. ("Attenti"), the company that Plaintiff alleged in his **five**

prior complaints in this case manufactured, sold and monitored the electronic monitoring device

that Plaintiff claims was defective and caused him damages. This Court ruled that *res judicata*

barred Plaintiff's claims as repetitive of his 2016 lawsuit that was dismissed and affirmed on

appeal, and dismissed all defendants in this case other than Apax *with prejudice*.  DE 82.

The Order of Dismissal also granted Apax's motion to dismiss for lack of personal jurisdiction, *without prejudice*, and allowed Plaintiff one more opportunity, his sixth, to attempt to establish personal jurisdiction over Apax.  But in his Fifth Amended Complaint ("FAC"), Plaintiff failed to allege <u>any</u> new jurisdictional facts as to Apax.  Rather than allege any new jurisdictional facts, Plaintiff instead repeated the same allegations of his prior complaint regarding the manufacture, sale and monitoring of the electronic monitoring device at issue, except that he used a "find and replace" tool and simply substituted Apax in the allegations in place of Attenti.  By substituting Apax for Attenti in his sixth complaint, Plaintiff attempts to avoid dismissal by falsely alleging that Apax manufactured, sold and monitored the electronic monitoring device Plaintiff used until 2013, contradicting his five prior complaints in this case as well as in the 2016 Lawsuit against Attenti, where he alleged that Attenti was the manufacturer, seller and monitor of the device.  Plaintiff's factual allegations in the five prior complaints in this case allege that Apax's sole role in the case was its alleged involvement in the sale of Attenti in 2017—four years after Plaintiff last used an allegedly defective electronic monitoring device. That limited allegation is insufficient to establish personal jurisdiction over Apax or state a cause of action.

Plaintiff has had six attempts to allege personal jurisdiction over Apax and to state a cause of action. This Court should finally end this case by dismissing Apax with prejudice.  Even if Plaintiff could establish personal jurisdiction over Apax, he fails in his sixth attempt to state a cause of action.  Enough is enough.  This Court should put this meritless case to rest.

## I.     BACKGROUND

In his Fifth Amended Complaint ("FAC"), Plaintiff repeats his claims that he suffered damages from his use of a defective electronic monitoring device (ankle bracelet) he wore during

his State Probation from 2008 to 2013[1].  FAC ¶ 21.  Plaintiff claims that as a result of the errors made by the electronic monitoring device, he was wrongly arrested on seven different occasions for violations of probation and spent 241 days in jail.  *Id.* ¶ 23.  In his prior complaints in this lawsuit, he alleged that the manufacturer of the allegedly defective device was Attenti.  Plaintiff's claims relating to the allegedly defective equipment were already litigated, dismissed with prejudice, and affirmed on appeal in a 2016 Lawsuit brought by Plaintiff against Attenti, formerly known as 3M Electronic Monitoring, Inc. ("3M EM").  *See Clements v. Attenti US, Inc.*, 735 F. App'x 661 (11th Cir. 2018); *Clements v. 3M Electronic Monitoring, Inc.*, Case No. 2:16-cv-776-FtM- SPC-UAM, 2017 WL 4326618 (M.D. Fla. June 29, 2017).  During the course of the appeal of the 2016 Lawsuit, 3M EM was re-named Attenti. *Clements*, 735 F. App'x at 662 n.1.

After filing multiple motions for rehearing in the 2016 Lawsuit, which were denied and the denials were affirmed on appeal, Plaintiff filed this case on April 28, 2020, this time against Attenti (f/k/a 3M EM) as the manufacturer, 3M Company ("3M") as the former owner of 3M EM/Attenti, and Mike Roman as the CEO of 3M.  Plaintiff also sued Apax and alleged it to be a British private equity firm that acquired ownership in Attenti in 2017, more than four years after his last arrest for violation of probation. Plaintiff repeated these allegations in his prior five complaints in this case. *See generally* DE 1, 16, 24, 55 and 57. On March 16, 2021, this Court properly dismissed *with prejudice* all claims in the Fourth Amended Complaint against Attenti, 3M and Roman based on *res judicata* since the same claims were raised in the 2016 Litigation against Attenti, and because 3M and Roman were in privity with Attenti. DE 82. In the same Order, this Court dismissed the

---

[1] While Plaintiff alleges that he wore an electronic monitoring device from 2008-2013, it was established in Plaintiff's 2016 Lawsuit that his final arrest for violation of probation occurred on September 13, 2012, Plaintiff's final injury occurred sometime prior to September 13, 2012. *Clements*, 2017 WL 4326618 at *2-3.

sole claim against Apax (Count X for fraudulent transfer and FDUTPA) *without prejudice* for lack of personal jurisdiction, but provided Plaintiff an opportunity to amend to attempt to allege personal jurisdictional as to Apax. *Id.* at p. 19. Plaintiff then filed the FAC.

## II.    THE FIFTH AMENDED COMPLAINT ("FAC")

The Fourth Amended Complaint purported to articulate a single claim against Apax. Indeed, in its dismissal Order, this Court noted that "Apax is only identified in Count X for a violation of Fla. Stat. § 726.105 and 11 U.S.C. § 548(E)(2) [Fraudulent Transfer] and Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201" and permitted Plaintiff to amend its personal jurisdiction allegations to potentially keep that claim against Attenti alive. DE 82 at pp. 18-19. However, Plaintiff did not beef up the personal jurisdiction allegations against Apax. Instead, the FAC repeated the exact same jurisdictional allegations against Apax. He also added Apax CEOs Sillitoe and Truwit as new defendants. A comparison of the Fourth Amended Complaint and the FAC reveals that Plaintiff only added two new substantive paragraphs:

- It is public knowledge that APAX PARTNERS LLP as investor/owner, advised funds for the purchase of 3M Electronic Monitoring with the name changed to ATTENTI. *See* https://pestakeholder.org/continuing-incarceration-apax-partners-digital-shackles/. (FAC ¶ 7).

- It is public knowledge that US Senator Elizabeth Warren and Members of the US House of Representatives Alexandria Ocasio-Cortez and Mark Pocan have targeted APAX for investing in and acquiring ATTENTI Electronic Monitoring in their war on private equity firms profiting from incarceration and detention. *See* https://www.warren.senate.gov/imo/media/doc/2019-09-30%20Letters%20to%20PE%20Firms%20re%20Prison%20Services.pdf. (FAC ¶ 8).

Plaintiff's sole and most significant change in the FAC was to run a "find-and-replace" to substitute "Apax" or "Defendants" (referring to all 3 Apax Defendants[2] collectively) in place of

---

[2] Apax, Sillitoe and Truwit are referred to collectively herein as the "Apax Defendants." Sillitoe and Truwit are referred to as the "Apax CEOs."

the former defendants Attenti and 3M (now dismissed with prejudice), and likewise substituting the names of Apax's CEOs Sillitoe and Truwit in place of 3M CEO Mike Roman (now dismissed with prejudice)—not even bothering to change or customize the allegations. As a result of the "find-and-replace" scheme, the claims in the 2016 Lawsuit and in the 5 prior complaints filed in this lawsuit which alleged that Attenti manufactured and sold the defective electronic monitoring devices, and monitored offenders who were issued the devices, are now allegations against the Apax Defendants. The allegations from the prior complaints to the FAC changed from Apax being solely alleged to be a private equity investment firm that allegedly acquired an ownership interest in Attenti more than four years after Plaintiff last used an electronic monitoring device, to:

- 3M, ROMAN and currently, ATTENTI APAX manufactured/s and provides the FDOC with the One-Piece Tracking Device 4 (TD4). *Cf.* DE 57 ¶ 32; DE 84 ¶ 35.

- [T]o the tune of approx. $243,000,000, DEFENDANTS 3M, ROMAN and (currently ATTENTI), APAX had/has over 20 years of continuous service as the electronic monitoring vendor for the Florida Department of Corrections. *Cf.* DE 57 ¶ 34; DE 84 ¶ 37.

- From 2008 onward (of relevant dates for this case), DEFENDANTS[3] 3M and ROMAN had available detailed reports and evidence which would have excluded the Plaintiff as to the VOP violations. The evidence was either ignored or withheld from the Plaintiff, his counsel, and the courts. *Cf.* DE 57 ¶ 59; DE 84 ¶ 61.

- For at least 2 of the VOP hearings, DEFENDANTS 3M and ROMAN would send employees to act as EXPERT WITNESSES who would testify as to the reliability of the Electronic Monitoring Equipment and the unreliability of Plaintiff. *Cf.* DE 57 ¶ 26; DE 84 ¶ 29.

- Since the Courts or State or law enforcement (FDOC) did not know the true nature of the evidence and DEFENDANTS 3M and ROMAN had concealed such evidence, Plaintiff's was not able to dispute or use exculpatory evidence to his benefit. *Cf.* DE 57 ¶ 23; DE 84 ¶ 26.

- Defendant's ROMAN TRUWIT and SILLITOE, and other unnamed employees, have failed to provide proper oversight of the DEFENDANT 3M APAX, failed to rein in and/or follow the requirements of the United States and Florida

---

[3] "Defendants" as used in the FAC refers to all 3 Apax Defendants collectively.

Constitutions and/or stop DEFENDANT ~~3M~~ <u>APAX</u> and employees, who, as a continuous group, have caused false charges to be made against innocent persons, who have caused to be authored false reports about innocent persons, who have lied or left out the defects to FDOC to cause to instigate and support false charges, thereby causing convictions on those charges, and who have done so as to Plaintiff, thereby making Defendants liable to Plaintiff. *Cf.* DE 57 ¶ 49; DE 84 ¶ 51.

Despite clearly articulating in all 5 prior complaints that Apax's limited role was as a private equity firm allegedly involved in the purchase of 3M EM in 2017, with his find-and-replace scheme Plaintiff is now suddenly alleging that Apax (and not Attenti): manufactured the electronic monitoring equipment Plaintiff wore while on probation from 2008 to 2013; had contracts with the Florida Department of Corrections for the past 20 years; was somehow involved in hiding exculpatory evidence at Plaintiff's violation of probation hearings from 2008 to 2013; provided company employees/experts to testify at these hearings from 2008 to 2013; and its CEOs (or employees under their watch) concealed exculpatory evidence and/or evidence of product defects at these hearings, and joined in a conspiracy to conceal and further their criminal conduct so they could maintain lucrative government contracts. FAC ¶¶ 26, 29, 35, 37, 51, 61, 65. None of these "find-and-replace" allegations are true as conceded and contradicted by Plaintiff's prior pleadings in this case and in the 2016 Lawsuit.

As explained below, this Court must disregard Plaintiff's find-and-replace allegations. Absent these new and entirely contradictory allegations, the FAC fails to add any new personal jurisdictional allegations against Apax. For the same reasons that this Court previously dismissed the Fourth Amended Complaint for lack of personal jurisdiction over Apax, the Court should now dismiss the Fifth Amended Complaint, *with prejudice*, for those very same reasons and for the additional reason that the remaining count against Apax fails to state a claim.

## ARGUMENT

### I.   APAX IS NOT SUBJECT TO PERSONAL JURISDICTION IN FLORIDA

This Court previously held that the Fourth Amended Complaint failed to sufficiently allege facts establishing that Apax was subject to personal jurisdiction in Florida.  DE 82, p. 19. Although this Court afforded Plaintiff a sixth opportunity to attempt to establish personal jurisdiction over Apax, the FAC fails to add *any* new jurisdictional allegations as to Apax.[4] This Court already determined that the allegations in the Fourth Amended Complaint were insufficient to establish personal jurisdiction. Plaintiff had an opportunity to perfect his jurisdictional allegations as to Apax, but failed to do so. For the same reasons as indicated in the Order of Dismissal (DE 82), the FAC should now be dismissed *with prejudice* for lack of personal jurisdiction over Apax.

"A court must dismiss an action against a defendant over which it lacks personal jurisdiction." *Hinkle v. Cont'l Motors, Inc.*, No. 8:16-CV-2966-T-36MAP, 2018 WL 10096594 (M.D. Fla. July 12, 2018) (internal quotes omitted). "A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (*quoting United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "Conclusory allegations are insufficient." *3Lions Publ'g, Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031 (M.D. Fla. 2019) (citing *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268-69 (11th Cir. 2002)). "When a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position, the burden

---

[4] Aside from the contradictory find-and-replace allegations, which the Court should disregard for the reasons discussed below, all other jurisdictional allegations in the FAC remain unchanged.

traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Id.* (*quoting Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).

Whether personal jurisdiction exists is a two-step inquiry. The exercise of jurisdiction must: (1) be appropriate under the state's long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mazer*, 556 F.3d at 1274; *Burris v. Green*, Case No. 3:12cv521-MCR-CJK, 2016 WL 5844165, at *3 (N.D. Fla. 2016).

The FAC once again fails to establish personal jurisdiction over Apax. Plaintiff alleges that Apax is a British private equity firm, headquartered in London, England, and that Apax also operates out of Tel Aviv. FAC ¶ 2. Plaintiff alleges that Apax is authorized to do business in the United States at an address in New York, and alleges in conclusory fashion that "Apax is within the reach of Florida's long-arm Statute, § 48.193." *Id.* Plaintiff alleges that in 2017, while the 2016 Lawsuit was still pending, 3M "sold or 'dumped'" 3M EM, the defendant in his 2016 case "to Apax Partners LLP and then renamed it to Attent[i] [US, Inc.]." *Id.* ¶¶ 45, 46, 48. Plaintiff claims that Apax is connected to Florida because it has or had an alleged ownership[5] interest in Attenti (f/k/a 3M EM), which he claims it acquired by fraudulent conveyance. *Id.*

By Declaration, Apax once again states under oath that it did not purchase 3M EM from 3M, and has never owned 3M EM in that name, or in its current name, Attenti. *See* Declaration of Simon Cresswell ("Cresswell Declaration"), attached as **Ex. A** at ¶ 6. The Cresswell Declaration likewise confirms that Apax is indeed a private equity advisory firm based in London, England

---

[5] As an additional matter, because on the face of the FAC Apax is being sued in its capacity as an owner of Attenti (which it is not) (*see* Cresswell Declaration, attached hereto as **Ex. A** at ¶ 6), Apax is entitled to dismissal of all claims on the basis of *res judicata* like all of the other similarly-situated previously-dismissed former defendants because it would be in privity with Attenti. "Owners of a corporation can be found to be in privity with the corporation." *Griswold v. Cty. of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010); *see also Burstein v. Rumball*, No. 06-81064, 2007 WL 9642995, at *2 (S.D. Fla. May 21, 2007).

and consequently, a non-resident Defendant. The Declaration further provides that Apax has no connection or ties to Florida, does not engage in or carry on a business in Florida, does not have an office or any agents in Florida, and does not otherwise participate in any activities which would subject it to the jurisdiction of Florida's long-arm statute, § 48.193, Fla. Stat. **Ex. A** at ¶¶ 6-20.

Even if Apax did own Attenti, "a nonresident's ownership of a company operating in Florida is insufficient to establish personal jurisdiction under § 48.193." *Schwartzberg v. Knobloch*, 98 So. 3d 173, 181 (Fla. 2d DCA 2012) ("ownership of a resident subsidiary corporation by an out-of-state parent corporation, without more, has been repeatedly deemed insufficient to meet the requirements of section 48.193. The same rule applies to nonresident individual shareholders of corporations resident in Florida") (quotations and citations omitted).

Furthermore, even assuming, *arguendo*, that Apax did take an ownership interest in Attenti (f/k/a 3M EM) and that receipt of such ownership interest could somehow constitute a fraudulent transfer, which it does not, the law is clear that a fraudulent transfer does not constitute a "tortious act" for purposes of establishing personal jurisdiction under section 48.193(1)(a)(2) of Florida's long-arm statute. *Burris v. Green*, 3:12CV521-MCR-CJK, 2016 WL 5844165, at *4 (N.D. Fla. Aug. 26, 2016), r*eport and recommendation adopted*, 3:12CV521-MCR-CJK, 2016 WL 5844481 (N.D. Fla. Sept. 30, 201; *Edwards v. Airline Support Group, Inc.*, 138 So. 3d 1209, 1211-12 (Fla. 4th DCA 2014); *Beta Real Corp. v. Graham*, 839 So. 2d 890, 891-92 (Fla. 3d DCA 2003). A fraudulent transfer is not a "tortious act" because the Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101, et seq., does not "speak in terms of 'liability' for a wrongful act or in terms of 'money damages.'" *Edwards*, 138 So. 3d at 1212 (internal citation omitted). The remedy for a claim of fraudulent conveyance is "cancellation" of a transfer, "not the creation of liability for the consequence of a wrongful act." *Id.* The fraudulent transfer act "is more 'in the nature of contract,'

as it allows a creditor to avoid a transfer or allows a court to appoint a receiver to take charge of the property transferred." *Id.* "Because a person is not 'liable' for receipt of a fraudulent transfer under section 726.108. . . a fraudulent transfer is not a 'tortious act' under Florida's long-arm statute." *Id.* Therefore, even taking Plaintiff's allegations of fraudulent transfer as true, they are insufficient to establish personal jurisdiction over non-resident defendant Apax.

Because the Cresswell Declaration, under the penalty of perjury, rebuts and refutes Plaintiff's allegations that Apax is subject to the jurisdiction of Florida's long-arm statute, in the absence of contrary evidence from Plaintiff, dismissal is required. *Louis Vuitton Malletier, S.A.,* 736 F.3d at 1350. As with the Fourth Amended Complaint, the FAC includes no allegations of Apax's activities in Florida as is necessary to establish personal jurisdiction. Accordingly, this Court lacks personal jurisdiction over Apax.

### A. Court Must Disregard Plaintiff's Contradictory Find-And-Replace Allegations

Rather than allege any new facts as to Apax's activities, in an attempt to establish jurisdiction over Apax, Plaintiff instead improperly used a "find-and-replace" scheme to swap the factual allegations from the prior complaint made against the dismissed defendants to now assert them against Apax in the FAC. As is obvious from all prior complaints filed in this case and in the 2016 Lawsuit, the facts previously alleged against others cannot be attributed to Apax. Attenti was the manufacturer of the electronic monitoring device Plaintiff used from 2008 until 2013, not Apax. As reflected in all of Plaintiff's prior pleadings, Apax's only alleged involvement has been that it acquired an ownership interest in Attenti **in 2017**—which sale and change of ownership Plaintiff claims was "fraudulent" because Plaintiff was a <u>prospective</u> judgment creditor at the time of the sale. *See* Compl. DE 1 ¶¶ 13, 18, 54, 58; Am. Compl. DE 16 ¶¶ 15, 20, 61, 65; 2nd Am. Compl. DE 24 ¶¶ 16, 21, 66, 70; 3rd Am. Compl. DE 55 ¶¶ 18, 26, 71, 75; 4th Am. Compl. DE 57

¶¶ 42-47, 151-155; FAC ¶¶ 14, 45, 46, 48. Apax has never been alleged to have been involved in electronic monitoring or in any other facts prior to the sale in 2017. The obviously false and careless find-and-replace allegations in the FAC must be disregarded.

Where an amended pleading directly contradicts facts set forth in a prior pleading (or in this case, *5 prior pleadings*) in order to avoid a dismissal, this Court may consider prior pleadings in ruling on a motion to dismiss. *See Fernandez v. Sch. Bd. of Miami-Dade County*, 201 F. Supp. 3d 1353, 1361 n.1 (S.D. Fla. 2016) (holding that courts may disregard pleadings "when the plaintiff directly contradicts the facts set forth in his original complaint" and refusing to take cognizance of facts in an amended complaint where plaintiffs had manipulated the allegations in their pleadings to avoid dispositive *res judicata* and collateral estoppel defenses). In *Colliton v. Cravath, Swaine & Moore LLP*, the court accepted the facts as alleged in the plaintiff's original complaint as true for the purposes of a motion to dismiss where the plaintiff made a "transparent attempt...to amend his pleading[s] in order to avoid a dispositive defense" raised by the defendant and the amended complaint directly contradicted the original complaint. *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 Fed. Appx. 535 (2d Cir. 2009).

Plaintiff's 2016 Lawsuit also directly contradicts the find-and-replace allegations in the FAC. Plaintiff's 2016 Lawsuit alleged that 3M EM (n/k/a Attenti) was the manufacturer, seller and monitor of the device. *See Clements v. 3M Electronic Monitoring*, 795 Fed.Appx. 738, 739 (11th Cir. 2019) ("Louis Clements . . . sued 3M Electronic Monitoring [n/k/a Attenti US, Inc.] alleging that an ankle-monitoring bracelet 3M [Electronic Monitoring] manufactured was defective."). Plaintiff cannot contradict prior factual allegations in this case and in the 2016

Lawsuit in order to avoid a dismissal. This Court need not accept those contradictory allegations as true and they are thus insufficient to establish jurisdiction.

While these allegations should be disregarded as contradictory of prior pleadings, in any event, they are also expressly refuted by the Cresswell Declaration which clarifies that Apax has never manufactured, sold or monitored electronic monitoring equipment. **Ex. A** ¶ 7. Apax has never been in the business of providing electronic monitoring services. *Id.* ¶ 8. Apax has never provided electronic monitoring equipment or services, or entered into a contract or agreement to provide electronic monitoring equipment or services, to the State of Florida, the Florida Department of Corrections, or any other person or entity. *Id.* ¶ 9. Apax never provided testimony, documents, or other evidence in connection with a violation of probation hearing. *Id.* ¶ 10. To the extent these jurisdictional facts are considered, they are refuted and cannot confer jurisdiction.

## II.    FED. R. CIV. P. 12(b)(6): FAILURE TO STATE A CLAIM

Even if this Court had personal jurisdiction over Apax, the Court should dismiss Count X for failure to state a claim because it fails to allege facts to support each of the required elements for the FDUPTA and fraudulent transfer claims.

When deciding a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89 (2007). However, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth*." Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations that are merely consistent with a defendant's liability fall short of being

facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted).

### A.  Plaintiff fails to state a claim for FDUTPA

To establish a FDUTPA claim, a plaintiff must allege "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Mandala v. Tire Stickers, LLC*, No. 19-14416, 2020 WL 5814496, at *5 (11th Cir. Sept. 30, 2020) (citing *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013)).

The entirety of Plaintiff's FDUTPA claim is set forth in 5 paragraphs. *See* FAC Count X ¶¶ 153-157. In a barebones manner, Plaintiff states in conclusory language: "Defendants conspired with 3M, ATTENTI and ROMAN to participate in the affairs of an enterprise through a pattern of deceptive and unfair trade practices and predicate acts as herein described." *Id.* ¶ 154. Plaintiff fails to incorporate any alleged "predicate acts" or allege a specific deceptive act or unfair trade practice that any of the Defendants engaged in or "conspired" to commit. *Id.* ¶¶ 153-157. Without more, Plaintiff's FDUTPA claim falls woefully short and fails to state a claim due to a failure to sufficiently allege deceptive or unfair conduct, as well as causation, and actual damages.

In addition to failing to allege that Apax committed any deceptive act or unfair trade practice, Plaintiff does not and cannot allege that he suffered damages resulting from the 2017 transfer of ownership of Attenti. Instead, he claims that he suffered damages because he was allegedly wrongfully incarcerated several times, as a result of a defective electronic monitoring device he wore from 2008-2013. Apax's first involvement with electronic monitoring, according to the FAC, was in 2017 when ownership in Attenti changed. Plaintiff clearly cannot establish causation or damages, even if he could prove any deceptive act or unfair trade practice of Apax.

**B.  Plaintiff fails to state a claim for Fraudulent Transfer**

Plaintiff's attempt to state a fraudulent transfer claim in Count X likewise fails. To state a claim for fraudulent transfer under section 726.105, Florida Statutes, a plaintiff must allege that (1) he was a creditor that was defrauded, (2) that defendants intended to commit the fraud, and (3) that the fraud involved a conveyance of property that could have been applicable to the payment of the debt due. *Dillon v. Axxsys Int'l, Inc.,* 185 F. App'x 823, 828–29 (11th Cir. 2006) (citing *Nationsbank, N.A. v. Coastal Utils. Inc.,* 814 So.2d 1227, 1229 (Fla. 4th DCA 2002)). There can be no fraudulent transfer claim here.

Plaintiff claims he was a creditor because at the time that ownership of 3M EM changed in October 2017, he was a "potential Judgment Creditor" through his 2016 Lawsuit.  FAC ¶ 46.  Plaintiff did not succeed in the 2016 Lawsuit and was never an *actual* judgment creditor and thus the analysis should end there.  "A fraudulent conveyance action is simply [a] creditors' remedy." *McCalla v. E.C. Kenyon Const. Co., Inc.*, 183 So. 3d 1192, 1194 (Fla. 1st DCA 2016).  Such action merely allows the court to reverse or unwind an alleged fraudulent asset transfer so that the judgment creditor can recover against the assets to satisfy their judgment.  *Edwards*, 138 So. 3d at 1212.  Plaintiff never secured a judgment.  Plaintiff is not a creditor.  Plaintiff has no basis to set aside an alleged fraudulent asset transfer because he has no entitlement to recover any assets of 3M EM or Attenti.  Plaintiff does not (*and cannot*) state a claim for fraudulent transfer and such claim must be dismissed *with prejudice*.

Moreover, the FAC does not allege that 3M EM (n/k/a Attenti), as a *potential* judgment debtor, transferred any assets at any time. Rather, Plaintiff alleges that ownership of 3M EM changed hands.  Specifically, Plaintiff alleges that 3M transferred ownership of 3M EM to Apax, which renamed it Attenti. *Id.* ¶ 45.  Plaintiff does not allege that 3M EM or Attenti, as potential

judgment debtor, ever transferred assets to Apax that could have been applicable to the payment of a judgment, or that 3M EM or Attenti would not have been able to satisfy a judgment, had Plaintiff ultimately succeeded in his 2016 Lawsuit, which he did not.

Finally, because Plaintiff does not allege that Apax is a recipient transferee of assets from potential judgment debtor 3M EM / Attenti, he fails to state a cause of action against Apax.  To the extent Plaintiff purports to allege some kind of conspiracy, "Florida law does not recognize a cause of action against a non-transferee for conspiracy to commit a fraudulent transfer." *In re Ernie Haire Ford, Inc.*, 459 B.R. 824, 841 (Bankr. M.D. Fla. 2011); *see also Danzas Taiwan, Ltd. v. Freeman*, 868 So. 2d 537, 538 (Fla. 3d DCA 2003) (finding "there is no cause of action against Danzas Taiwan for conspiracy to engage in fraudulent transfers" because "[t]here is no allegation that Danzas Taiwan is a recipient of fraudulently conveyed assets"); *In re Fundamental Long Term Care, Inc.*, 512 B.R. 690, 705-06 (Bankr. M.D. Fla. 2014) ("non-transferor or non-transferee must benefit from a fraudulent transfer to be liable for civil conspiracy").  Accordingly, even if Plaintiff had adequately alleged that a fraudulent transfer of assets owned by 3M EM or Attenti occurred, he does not allege that Apax is the recipient of any fraudulently transferred asset and therefore Apax is not a proper party to such claim.

## III.   THE OTHER 11 COUNTS IN THE FAC FAIL TO STATE A CAUSE OF ACTION

Because of Plaintiff's find-and-replace scheme, it is unclear whether Plaintiff now attempts to potentially reallege each of the other 11 counts—previously alleged only against 3M, Attenti and Roman and now dismissed with prejudice—against the Apax Defendants who were never named in those counts in the first 5 complaints. These additional 11 counts are product liability claims based on alleged events and injuries occurring between 2008 and 2013 while Plaintiff was subject to electronic monitoring— more than 4 years before Apax allegedly entered the picture as

an investor/owner in Attenti in 2017. These claims—which may or may not be directed at the Apax Defendants as it is unclear from the FAC—fail for a number of reasons.

*First*, the re-pleading of these claims was not authorized by this Court, which specifically noted in its Order Dismissing the Fourth Amended Complaint that "Apax is only identified in Count X for a violation of Fla. Stat. § 726.105 and 11 U.S.C. § 548(E)(2) [Fraudulent Transfer] and Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201" and permitted Plaintiff to amend its personal jurisdiction allegations to potentially keep the one claim against Apax alive. DE 82, pp. 18-19. *Second*, as articulated above, to the extent these claims are being newly alleged against Apax, they should be disregarded as directly contradictory to facts alleged by Plaintiff in this lawsuit and in the 2016 Litigation, which claims were dismissed *with prejudice*. *Third*, to the extent these are successor liability claims based on Apax's alleged position as the new owner of Attenti (which it is not), Apax is entitled to dismissal on the basis of *res judicata* because it is in privity with Attenti. *See* Fn. 5, *supra*. *Finally*, these claims all fail for the additional reasons that (1) they are barred by the statute of limitations, and (2) they fail to state a claim.

## A. Plaintiff's Claims Are Barred By the Statute of Limitations

All of Plaintiff's claims (other than Count X for fraudulent transfer in 2017) are based on injuries he claims to have last suffered while using the electronic monitoring device, which he last wore in 2013. FAC ¶ 21. Plaintiff filed this lawsuit in 2020, almost seven years after his injuries arose. As such, all of his claims are barred by the statute of limitations because they accrued more than four years prior to the filing of this action.

In Florida, products liability actions are subject to a four year statute of limitations period. Fla. Stat. § 95.11(e)(3). The statute of limitations period for a RICO claim is also four years. *See Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013) (noting that the statute of limitations for

civil RICO actions is 4 years and begins to run when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering). Likewise, Plaintiff's FDUTPA claim is also subject to a 4 year statute of limitations. *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1192 (S.D. Fla. 2017) (statute of limitations for a FDUTPA claim is four years).

Plaintiff alleges he knew about the alleged defective monitoring equipment since prior to June 4, 2013, which was the last date he was subject to monitoring. (FAC ¶ 21). As such, Plaintiffs claims are time-barred as Plaintiff knew or should have known of the alleged defect of the product at the latest, by June 4, 2013. Notably, Plaintiff did not bring this action until April 28, 2020—almost 3 years after the limitations period expired. As such, Plaintiff's 11 claims sounding in product liability must be dismissed as time barred.

A court may dismiss a case based on the statute of limitations where "it is apparent from the face of the complaint that the claim is time-barred." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005) (internal quotation marks omitted); *McKnight v. Reynolds*, Case No. 2:14-CV-185-FTM-38M, 2014 WL 4232557 (M.D. Fla. Aug. 27, 2014) (dismissing plaintiff's complaint on statute of limitations grounds because the date of each incident underlying plaintiff's claims was apparent from the face of the complaint).

To the extent that Plaintiff argues that estoppel, tolling and fraud regarding the 2016 Lawsuit somehow extends the time for him to file this action, he is wrong. "Equitable estoppel 'presupposes that the plaintiff knows of the facts underlying the cause of action but delayed filing suit because of the defendant's conduct.'" *Clements*, 2017 WL 4326618 (M.D. Fla. June 29, 2017) (citing *Black Diamond Props., Inc. v. Haines*, 69 So. 3d 1090, 1093 (Fla. 5th DCA 2011)). "Stated another way, equitable estoppel arises where the parties recognize the basis for suit, but the

wrongdoer prevails upon the other to forego enforcing his right until the statutory time has lapsed." *Id*. Plaintiff cites no such conduct by any of the Defendants. As such, Plaintiff's product liability claims are clearly time barred.

### B. Plaintiff fails to state a claim

#### 1. Strict Liability (Design Defect)

In Count I, Plaintiff attempts to allege a claim for strict liability premised upon design defect. To state a claim for strict liability, a plaintiff must establish (1) the manufacturer's relationship to the product in question, (2) the defective and unreasonably dangerous condition of the product, and (3) the existence of a proximate causal connection between such condition and the user's injuries or damages. *Bailey v. Janssen Pharmaceutical, Inc.,* 288 F. App'x 597, 604 (11th Cir. 2008) (citing *West v. Caterpillar Tractor Co.,* 336 So.2d 80, 87 (Fla. 1976)).

Even assuming, *arguendo*, that this Court can consider Plaintiff's contradictory allegation that Apax is the manufacturer of the alleged defective monitoring bracelet, his claim would still fail because he cannot establish the "unreasonably dangerous condition" of the product. See *Veliz v. Rental Serv. Corp. USA, Inc.,* 313 F. Supp. 2d 1317, 1326–27 (M.D. Fla. 2003) ("a manufacturer is, as a matter of law, under no duty to produce a fail-safe product, so long as the product poses no unreasonable dangers for consumer use."). Plaintiff's FAC alleges that "Defendants knew that the defective condition of EM equipment made it unreasonably dangerous to all those using them, including but not limited to (former) Probationers Plaintiff." FAC ¶ 68. However, Plaintiff alleges that the alleged defect is in defective monitoring of his whereabouts while using the equipment. He does not allege that the bracelet itself was "unreasonably dangerous" for consumer use because it caused him personal injury or created an unreasonable risk of personal injury. Instead, the

allegations here are no more than bare conclusions, and Plaintiff fails to allege any facts to support his claim.  Plaintiff thus fails to state a claim for strict liability for design defect.

2.   Intentional Infliction of Emotional Distress (IIED)

In the 2016 Lawsuit, the Eleventh Circuit twice affirmed the trial court's refusal to permit Plaintiff to amend to add in an IIED claim. *See Clements*, 735 F. App'x at 663-64; *Clements*, 770 F. App'x at 507-08 ("Clements had the opportunity to challenge the district court's failure to address his motion for leave to amend both in his initial motion for reconsideration and during his first appeal," but he did not.)

 Nevertheless, Plaintiff attempts, but fails, to state a claim for IIED here. The required elements of an IIED claim are: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe. *Anderson v. Best Buy Stores L.P.*, Case No. 5:20-cv-41-Oc-30PRL, 2020 WL 3065645, at *3 (M.D. Fla. May 19, 2020) (citing *Thomas v. Bd. of Dirs. of Lee Cty.*, 41 So. 3d 246, 256 (Fla. 2d DCA 2010)). "The Florida Supreme Court has repeatedly advised that, to sustain this claim, the conduct must be 'so outrageous in character, and so extreme in degree' that it is considered 'atrocious ... and utterly intolerable in a civilized community.'" *Id.* (citing *Metropolitan Life Ins. Co. v. McCarson,* 467 So. 2d 277, 278–79 (Fla.1985)).

"Whether conduct is sufficiently 'outrageous' to state a claim for [IIED] is a question of law for the Court to decide." *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) (citation omitted). "While there is no exhaustive or concrete list of what constitutes 'outrageous conduct,' Florida common law has evolved an extremely high standard." *Merrick v. Radisson Hotels Int'l, Inc.,* No. 8:06-cv-1591-T-24TGW, 2007 WL 1576361 at *4 (M.D. Fla. May 30, 2007) (citing *Golden v. Complete Holdings*, Inc., 818 F. Supp. 1495, 1499 (M.D. Fla. 1993)).

Here, Plaintiff's allegations are insufficient to state a cause of action for IIED or "outrageous conduct." Accepting Plaintiff's allegations as true, the FAC does not allege that Defendants were specifically aware of Plaintiff, that they intended to cause him harm, and Defendants' alleged knowledge that the electronic monitoring equipment was defective does not constitute "outrageous conduct" as a matter of law. Plaintiff's allegations do not establish the extremely high level that is required for outrageous conduct.  Plaintiff fails to state a claim for IIED.

### 3.  Negligent Infliction of Emotional Distress (NIED)

Plaintiff attempted to allege the same NIED claim in the 2016 Lawsuit, but failed to do so and his case was dismissed. *See Clements*, 770 F. App'x at 507-08. In any event, Count III fails to allege a claim for NIED. In Florida, to recover for NIED, the plaintiff must suffer a physical impact from an external force. *Malverty v. Equifax Info. Servs., LLC*, 407 F. Supp. 3d 1257, 1265 (M.D. Fla. 2019) (citing *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007)).

In *Willis*, the Florida Supreme Court explained that:

> If the plaintiff has suffered an impact, Florida courts permit recovery for emotional distress stemming from the incident during which the impact occurred, and not merely the impact itself. If, however, the plaintiff has not suffered an impact, the complained-of mental distress must be manifested by physical injury, the plaintiff must be involved in the incident by seeing, hearing, or arriving on the scene as the traumatizing event occurs, and the plaintiff must suffer the complained-of mental distress and accompanying physical impairment within a short time of the incident.

*Willis*, 967 So. 2d at 850 (internal quotation marks and citations omitted). A plaintiff "generally may not recover damages for emotional distress caused by the negligence of another, unless the emotional distress injuries suffered flow from the plaintiff's physical injuries sustained in an impact." *Godelia v. Zoll Servs., LLC,* CASE NO. 16-CV-60471-GAYLES, 2017 WL 201826, at *5-6 (S.D. Fla. Jan. 18, 2017) ("insomnia, depression . . . inability to stop reliving [events], muscle

and stomach pain" are not "the type of discernable (physical injuries for which [a Plaintiff] may recover.")

Here, Plaintiff does not allege that his contact with the bracelet caused him any "impact." Rather, he claims that the defect was in the monitoring of his whereabouts, and that the incorrect reporting of his location caused him to be re-arrested. He does not claim that the device caused an "impact" on his body that caused his emotional injuries. In short, there was no "impact" in this case. Plaintiff does not and cannot allege that the physical contact of the bracelet and his ankle caused his emotional injuries. This is not a situation where the device shocked him or squeezed his leg. His claimed injuries result from the allegedly defective monitoring and thus, he does not satisfy the "impact" rule.

### 4. Misrepresentation; Fraudulent Concealment; Fraud and Deceit

In Counts IV, V, VI and VII, Plaintiff attempts to allege Fraudulent Misrepresentation, Fraudulent Concealment, Negligent Misrepresentation, and Fraud and Deceit. To state a claim, each of those counts require that Plaintiff in fact rely on an alleged false statement.[6] But here, Plaintiff's claims utterly fail because he expressly alleges that he <u>did not rely</u> on any false

---

[6] "Under Florida law, to plead a claim for fraud: a plaintiff must allege: 'the [representer] made a false statement regarding a material fact; (2) the [representer] knew or should have known the statement was false when he made it; (3) the [representer] made the false statement with an intention that the [listener] rely and act on it; and (4) an injury resulted to the [listener] who acted in justifiable reliance on the false statement.'" *Miller v. Ascom Holding AG*, Case No. 8:19-cv-2582-T-60CPT, 2020 WL 31228866, at *4 (M.D. Fla. June 12, 2020) (quoting *PNC Bank, N.A. v. M.D.K. Holdings, LLC*, Case No. 6:14-cv-598-Orl-41TBS, 2014 WL 12685922, at *2 (M.D. Fla. Oct. 22, 2014)). "To plead negligent misrepresentation under Florida law, a plaintiff must allege: (1) the defendant made a statement of material fact that the defendant believed was true but was actually false; (2) the defendant was negligent because he should have known the statement was false; (3) the defendant intended to induce the plaintiff to rely on the false statement; and (4) an injury resulted to the plaintiff acting in justifiable reliance on the false statement." *Miller*, 2020 WL 3128866, at *3 (quoting *Collins v. Countrywide Home Loans, Inc.*, 680 F. Supp. 2d 1287, 1293 (M.D. Fla. 2010)).

statements because he did not have any choice in the selection of the electronic monitoring device assigned to him by the Florida Department of Corrections. (*See* FAC, ¶ 21) ("Since Plaintiff was on State Probation and <u>required to wear EM DEFENDANTS Equipment whether it was defective or not.</u>"). Accordingly, he does not and cannot allege that he <u>relied</u> on any allegedly false statement made to him, and cannot state a cause of action for fraud or misrepresentation.

Finally, to the extent that Plaintiff attempts to allege that Defendants made statements to various government entities regarding its equipment, Plaintiff's claims fail because a fraud claim cannot be based on statements made to others or to the public in general. *See Dunkel v. Hamilton*, No. 3:15-CV-949-J-34PDB, 2016 WL 4844662, at * 8 (M.D. Fla. Aug. 8, 2016) ("A false statement may reach a plaintiff directly or circuitously but must be made with the intent it reach her and she act on it."). Counts IV, V, VI and VII must be dismissed with prejudice.

### 5. Gross Negligence

In Count VIII, Plaintiff attempts to allege a claim for Gross Negligence. "In Florida, '[g]ross negligence ... is defined as an act or omission that a reasonable prudent person would know is likely to result in injury to another.'" *Fed. Deposit Ins. Corp. v. Copengaver*, Case No. 8:13-cv-2037-T-33TBM, 2014WL12621202, at *5 (M.D. Fla. May 10, 2014) (citing *Boston ex rel. Estate of Jackson v. Publix Super Mkts, Inc.*, 112 So. 3d 654, 658 (Fla. 4th DCA 2013) (quoting *Eller v. Shova*, 630 So. 2d 537, 541 n.3 (Fla. 1993)). A plaintiff may plead gross negligence by alleging facts that show a defendant failed to exercise 'slight care' in circumstances likely to result in injury." *Id.* (citing *Farrell v. Fisher*, 578 So. 2d 407, 409 (Fla. 4th DCA 1991)).

Here, Plaintiff fails to allege a claim for gross negligence because he does not allege that Defendant committed any specific wrong that a reasonably prudent person would know is likely

to result in injury to another. Plaintiff broadly states that "[t]he wrongs committed by Defendants were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others similarly situated, the public, and Plaintiff[.]" (*See* FAC, ¶ 141). This allegation is not supported by specific facts that demonstrate that Defendant failed to exercise due care or that Defendant failed to act as a reasonable prudent person. Because Plaintiff cannot point to these facts his claim for gross negligence must be dismissed.

### 6.   Racketeer Influenced and Corrupt Organizations Act (RICO)

In Count IX, Plaintiff attempts to allege a claim for RICO under federal and Florida law.[7] To establish a RICO violation under 18 U.S.C. § 1962(c), a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1158 (11th Cir. 2019). Further, to state a claim for civil damages, 18 U.S.C. § 1964(c) requires that a plaintiff additionally allege: (5) injury to their business or property (6) by reason of the substantive RICO violation. *Id.* "A pattern of racketeering activity under RICO requires at least two qualifying predicate acts, each of which must constitute a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1)." *Id.* (citing *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290–91 (11th Cir. 2010)).

Here, Plaintiff does not allege predicate acts to support his RICO claim. He does not allege that Defendant violated any of the laws in 18 U.S.C. § 1961(1). Rather, Plaintiff generally states that "Defendants and co-conspirators 3M, ROMAN, and ATTENTI have joined in and participated in maintaining and continuing the pattern of criminal conduct of the enterprise from 1997 to the

---

[7] The interpretation of Florida's RICO law "is informed by case law interpreting the federal RICO statute ... on which Chapter 772 is patterned." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1263–64 (11th Cir. 2004) (internal quotations omitted).  "Florida's RICO statutes have consistently been interpreted using federal RICO claim cases." *See All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.,* 135 F.3d 740, 745 (11th Cir. 1998).

present day." (FAC, ¶ 150). Plaintiff does not specify or allege facts to support the criminal conduct of those Defendants. At best, Plaintiff seemingly implies that the two qualifying predicate acts might be "racketeering and conspiracy," but Plaintiff again fails to specify or point to any underlying criminal act or facts establishing such violations.  (FAC, ¶ 148).

To the extent Plaintiff's RICO claim is premised upon alleged fraudulent acts, his claim likewise fails because "RICO claims must be pled with particularity pursuant to Fed. R. Civ. P. 9(b)." *Allen v. First Unum Life Ins. Co.*, No. 2:18-CV-69-FTM-99MRM, 2019 WL 1359480, at *2 (M.D. Fla. Mar. 26, 2019). "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997)). Here, Plaintiff fails to allege any facts with the requisite specificity to satisfy Rule 9(b) and as such, his RICO claims fail.

### 7. Exemplary Damages

To the extent Plaintiff attempts to allege a cause of action for "exemplary damages" in Count XI, he fails to allege a cognizable claim. Plaintiff merely recites a type of legal remedy that he is attempting to seek as a result of Defendants' alleged "malicious and wanton actions." (*See* FAC, ¶ 158). As such, Plaintiff fails to state a cognizable claim and it must be dismissed.  *See Love v. Blue Cross and Blue Shield Ass'n*, Case No. 03-21296-CIV, 2010 WL 3781602, at *5 (S.D. Fla. May 24, 2010) (plaintiff's stand-alone counts for monetary and punitive damages were not recognized as cognizable claims).

8.   Unjust Enrichment

In Count XII, Plaintiff attempts to allege a claim for Unjust Enrichment. To state a claim for unjust enrichment, a plaintiff must allege: (1) that plaintiff conferred a benefit on defendant, who has knowledge thereof; (2) that defendant voluntarily accepted and retained the benefit; and (3) it would be inequitable for the defendant to retain the benefit without first paying the value to plaintiff. *Anderson*, 2020 WL 3065645 at *3 (citing *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d DCA 2018)).

Here, Plaintiff fails to allege any of the elements of unjust enrichment. He does not allege that he conferred any benefit on Defendants. Plaintiff implies that Defendants made money through contracts to sell electronic monitoring equipment to the State of Florida, but that does not constitute a benefit conferred by Plaintiff. FAC, ¶ 161. Plaintiff fails to allege facts to support any of the elements and the unjust enrichment claim must be dismissed.

## CONCLUSION

Plaintiff's FAC must be dismissed as this Court lacks personal jurisdiction over Apax in Florida, and because the claims fail to state a cause of action or are otherwise barred by *res judicata* or the statute of limitations. Plaintiff has had sufficient opportunities to perfect his pleadings and has failed. Further amendment should be denied. *See e.g. Edgerton v. City of Plantation*, 14-61472-CIV, 2015 WL 13311020, at *6 (S.D. Fla. Oct. 29, 2015) (finding dismissal with prejudice appropriate where Plaintiff had had five attempts to state valid claims) *citing Foman v. Davis,* 371 U.S. 178, 182 (1962) (holding that "repeated failure to cure deficiencies by amendments previously allowed" is grounds for dismissal with prejudice).

CASE NO.: 2:20-cv-00310-JES-MRM

## **LOCAL RULE 3.01(g) CERTIFICATION**

Undersigned counsel for the Defendants, Mark A. Romance, hereby certifies that on April 19, 2021, he conferred with *pro se* Plaintiff Louis Matthew Clements by email regarding the issues raised in this motion.  Plaintiff indicated that he opposes the relief sought in this Motion.

Dated:  April 21, 2021

Respectfully submitted,

*/s/ Mark A. Romance*
**Mark A. Romance**
Florida Bar No. 021520
mromance@daypitney.com
lmiller@daypitney.com
**Georgia A. Thompson**
Florida Bar No. 100181
gthompson@daypitney.com
lmiller@daypitney.com
**DAY PITNEY LLP**
396 Alhambra Circle
North Tower, Floor 14
Miami, Florida 33134
Telephone: (305) 373-4000
Facsimile: (305) 373-4099
*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 21, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on the *pro se* party identified below via U.S. Mail and email.

Louis Matthew Clements, *Pro Se*
1637 Hendry Street
Ft. Myers, FL 33901
Telephone: 239-940-0630
Jtkirk1969@yahoo.com

*/s/ Mark A. Romance*
**Mark A. Romance**

- 26 –