UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LOUIS MATTHEW CLEMENTS,

    Plaintiff,

v.                                Case No:   2:20-cv-310-JES-MRM

APAX PARTNERS LLP, ANDREW
SILLITOE, in his official
capacity as Co-CEO of Apax
Partners LLP, and MITCH
TRUWIT, in his official
capacity as Co-CEO of Apax
Partners LLP,

    Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on review of defendant Apax Partners LLP's Motion to Dismiss Fifth Amended Complaint (Doc. #87) filed on April 21, 2021, and Apax Co-CEOs Andrew Sillitoe and Mitch Truwit's Motion to Dismiss Fifth Amended Complaint (Doc. #93) filed on May 14, 2021.  Plaintiff was provided two chances to file a response.  (Docs. ## 94, 96.)  On July 1, 2021, plaintiff filed an Amended Successive Motion in Opposition (Doc. #97). Defendants seeks relief under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim. For the reasons stated below, the motions are due to be granted.

I.

On March 16, 2021, the Court issued an Opinion and Order (Doc. #82) finding that the Fourth Amended Complaint did not establish personal jurisdiction because plaintiff had failed to allege sufficient facts to make out a prima facie case of jurisdiction as to Apax.  Apax was only named in Count X for a violation of Florida law in the Fourth Amended Complaint.  Plaintiff was provided an opportunity to amend as to Apax only.  Defendants Sillitoe and Truwit were not named as defendants in the Fourth Amended Complaint.  On April 7, 2021, plaintiff filed a Fifth Amended Complaint (Doc. #84) adding Sillitoe and Truwit as defendants without leave of Court and after the October 16, 2020 deadline to amend pleadings.

Defendant Apax alleges that the Fifth Amended Complaint (Doc. #84) repeats the same insufficient allegations regarding personal jurisdiction, with only two substantive paragraphs[1] added to the

---

[1] The identified paragraphs are:

> It is public knowledge that APAX PARTNERS LLP as investor/owner, advised funds for the purchase of 3M Electronic Monitoring with the name changed to ATTENTI. See https://pestakeholder.org/continuing-incarceration-apax-partners-digital-shackles/. (FAC ¶ 7).

> It is public knowledge that US Senator Elizabeth Warren and Members of the US House of Representatives Alexandria Ocasio-Cortez and Mark Pocan have targeted APAX for

2

document.  (Doc. #87, p. 4.)  Defendants Sillitoe and Truwit believe two counts are directed as to them, Count IX and Count X.[2] Defendants Sillitoe and Truwit seek dismissal because they were added as new parties long after the deadline to add new parties, they are not subject to personal jurisdiction in Florida, the claims are barred by res judicata and the statute of limitations, and plaintiff fails to state a claim.  (Doc. #93, p. 4.)

Regarding personal jurisdiction, plaintiff argues that the Co-CEOs are liable for personal jurisdiction for the same reasons that Apax is liable, but that without discovery ownership cannot be determined.  (Doc. #97, p. 9.)  The remaining arguments center on the substantive issues.

## II.

In the Fifth Amended Complaint, plaintiff alleges that Apax is a British equity firm, headquartered in London, England, and that the company also operates out of Tel Aviv.  Plaintiff alleges that Apax is authorized to do business in New York, and that Apax

---

investing in and acquiring ATTENTI Electronic Monitoring in their war on private equity firms profiting from incarceration and detention.                          See https://www.warren.senate.gov/imo/media/doc/2019-09-30%20Letters%20to%20PE%20Firms%20re%20Prison%20Services.pdf. (FAC ¶ 8).

[2] The Court notes that the Fifth Amended complaint refers to defendants collectively in every count.

is within reach of Florida's long-arm statute. (Doc. #84, ¶ 2.) Sillitoe is a CEO, partner of Apax, and citizen of England. Truwit is the other CEO and a citizen of England. (Id., ¶¶ 3-4.) Plaintiff alleges that Apax was an "investor/owner, advised funds for the purchase of 3M Electronic Monitoring with the name changed to Attenti." (Id., ¶ 7.) Plaintiff alleges that Members of Congress have targeted Apax for investing in and acquiring Attenti. (Id., ¶ 8.)

Plaintiff alleges that defendants Apax and co-conspirators 3M and Roman are an association-in-fact enterprise engaged in a pattern of conspiracy and criminal activities and/or racketeering activities and in violation of Florida's Deceptive and Unfair Trade Practices Act. (Id., ¶¶ 10-12.) Plaintiff alleges that while he was on State probation from June 4, 2008 to June 4, 2013, the equipment he was wearing repeatedly malfunctioned. Plaintiff alleges that the malfunctions caused him to be arrested on seven occasions for violations of probation. (Id., ¶ 23.) Plaintiff alleges that the defect was not known to the courts or law enforcement and was concealed by defendants. (Id., ¶ 27.)

Plaintiff alleges that instead of fixing or replacing the defective equipment, 3M sold the company to Apax and renamed it to Attenti. (Id., ¶ 45.) Plaintiff alleges this sale was a fraudulent transfer as he was a "potential Judgement Creditor at the time." (Id., ¶ 46.) Plaintiff alleges that Apax and Attenti

4

are partners in ownership, and as co-conspirators with 3M and Roman and Attenti, defendants used deceptive practices to mislead consumers. (Id., ¶¶ 48, 50.) Plaintiff alleges that Truwit and Sillitoe, and other unnamed employees, failed to provide proper oversight of Apax but they managed and conducted the affairs of the enterprise and aided and abetted the conduct of Apax employees to conceal and cover up criminal and/or racketeering. (Id., ¶¶ 51, 56.) Plaintiff alleges that defendants have had detailed reports and evidence since 2008 that would have excluded plaintiff as to the probation violations, but it was withheld from counsel and the courts. (Id., ¶ 61.)

In Count I, plaintiff alleges design defects in Apax's equipment. Plaintiff argues that "defendants" knew of the defective condition and design posing a serious risk to the wearer. In Count II, plaintiff argues intentional infliction of emotional distress because defendants knew about the defectiveness of the monitoring equipment but did not relay the information to the State of Florida or plaintiff. In Count III, plaintiff alleges negligent infliction of emotional distress because plaintiff wore electronic monitoring equipment on his ankle that had an impact on him. Count IV alleges fraudulent misrepresentation, and Count V alleges fraudulent concealment. In Count VI, plaintiff alleges negligent misrepresentation because defendants were aware the testing procedures were flawed. In Count VII, plaintiff alleges fraud and

5

deceit due to defendants' unlawful, improper testing and blatant distribution of false information which over states the location finding ability of the monitoring equipment. In Count VIII, plaintiff alleges that defendants committed gross negligence and argues for punitive damages. Count IX alleges a RICO violation under both state and federal law. Count X alleges a violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA). Count XI simply seeks exemplary damages and Count XII alleges unjust enrichment.

    All defendants note that the find-and-replace nature of the Fifth Amended Complaint leads to inconsistencies. Apax argues:

> Despite clearly articulating in all 5 prior complaints that Apax's limited role was as a private equity firm allegedly involved in the purchase of 3M EM in 2017, with his find-and-replace scheme Plaintiff is now suddenly alleging that Apax (and not Attenti): manufactured the electronic monitoring equipment Plaintiff wore while on probation from 2008 to 2013; had contracts with the Florida Department of Corrections for the past 20 years; was somehow involved in hiding exculpatory evidence at Plaintiff's violation of probation hearings from 2008 to 2013; provided company employees/experts to testify at these hearings from 2008 to 2013; and its CEOs (or employees under their watch) concealed exculpatory evidence and/or evidence of product defects at these hearings, and joined in a conspiracy to conceal and further their criminal conduct so they could maintain lucrative government contracts. FAC ¶¶ 26, 29, 35, 37, 51, 61, 65.

(Doc. #87, p. 6.)  Similarly, Sillitoe and Truwit also note the "find-and-replace scheme" issues:

> Apax's actual role (as alleged in the **five** prior complaints filed in this action) is entirely separate. Apax is a British private equity firm headquartered in London, England. FAC ¶ 2. Until the find-and-replace scheme in the FAC, Plaintiff's only substantive allegations as to Apax were that in 2017, while the 2016 Lawsuit was still pending, 3M Company "sold or 'dumped'" 3M Electronic Monitoring (n/k/a Attenti), the defendant in the 2016 Lawsuit, to Apax who "then renamed it to Attent[i]"—which allegedly constituted a fraudulent conveyance to avoid payment of a potential judgment. *See* Compl. DE 1 ¶¶ 13, 18, 54, 58; Am. Compl. DE 16 ¶¶ 15, 20, 61, 65; 2nd Am. Compl. DE 24 ¶¶ 16, 21, 66, 70; 3rd Am. Compl. DE 55 ¶¶ 18, 26, 71, 75; 4th Am. Compl. DE 57 ¶¶ 42-47, 151-155. Indeed, Apax was only identified in Count X for Violation of FDUTPA based on the alleged Fraudulent Conveyance in 2017 (more than four years after Plaintiff last used a monitoring device in 2013 (FAC ¶ 21)). DE 82 p. 18; 4th Am. Compl. DE 57 ¶¶ 151-55.
>
> In contrast, none of the FAC allegations against Sillitoe and Truwit (all of which were previously alleged against 3M Company CEO Mike Roman) relate to the alleged 2017 fraudulent conveyance. Instead, because of the find-and-replace scheme, the FAC now alleges that Apax (and not Attenti) was the manufacturer, seller, and monitor of the electronic monitoring device Plaintiff used from 2008 to 2013, and that Apax's Co-CEOs (and not 3M Company's) were involved in an obstruction of justice conspiracy to suppress evidence of product defects at Plaintiff's VOP hearings from 2008 to 2013, thus causing him to be wrongfully incarcerated. FAC ¶¶ 48-65, 149, 155.

(Doc. #93, p. 3.)  Considering plaintiff's *pro se* status, the Court will assume that all counts apply to all three defendants as the allegations do not clearly identify defendants with any distinction.

### III.

When a defendant challenges the Court's personal jurisdiction over it, "the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present." Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th Cir. 2009).  The Court accepts the allegations in the complaint as true, "to the extent that they are uncontroverted by the Defendant's affidavits and depositions, and must construe all reasonable inferences in favor of the Plaintiff." Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000).  "Vague and conclusory allegations do not satisfy this burden." Catalyst Pharms., Inc. v. Fullerton, 748 F. App'x 944, 946 (11th Cir. 2018) (citing Snow v. DirecTV, Inc., 450 F.3d 1314, 1318 (11th Cir. 2006)).  Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

> When analyzing a dismissal for lack of personal jurisdiction, "we first determine whether the applicable statute potentially confers jurisdiction over the defendant." Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 942 (11th Cir. 1997). Jurisdiction over a non-resident

8

> defendant may be based upon a federal statute or a state long-arm statute. If a basis exists for exercising jurisdiction, we "then determine whether the exercise of jurisdiction comports with due process." Id.

Courboin v. Scott, 596 F. App'x 729, 732 (11th Cir. 2014). Under the Florida long-arm statute,

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> 2. Committing a tortious act within this state.
>
> 3. Owning, using, possessing, or holding a mortgage or other lien on any real property within this state.
>
> 4. Contracting to insure a person, property, or risk located within this state at the time of contracting.

Fla. Stat. § 48.193(1)(a). Further, "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2).

> In order for a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." Goodyear [Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846 (2011)] (internal quotation marks and brackets in original omitted). When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State. See id., at 931, n.6, 131 S. Ct. 2846 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales").

Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty., 137 S. Ct. 1773, 1781, 198 L. Ed. 2d 395 (2017).

The Declaration of Simon Cresswell (Doc.#87-1, Exh. A), a partner in Apax and general counsel, provides that he resides in England. Mr. Cresswell states that Apax did not purchase 3M Electronic Monitoring Company from 3M and has never owned 3M Electronic Monitoring Company in that name or in its current name Attenti US, Inc. In fact, Apax has never developed, manufactured, sold or monitored electronic monitoring equipment, and has never been in the business of providing electronic monitoring services. Apax has no connection or ties to Florida and does not engage in or carry out business in Florida. Mr. Cresswell asserts that Apax has not committed any tortious acts in the State of Florida and did not engage in solicitation or service activities in Florida that resulted in injury to Plaintiff.

The Declaration of Mitch Truwit (Doc. #93-3, Exh. 3) provides that Truwit is a Co-CEO of Apax, a private equity advisory firm based in London England. Truwit works in the New York office and resides in Connecticut. The Declaration of Andrew Sillitoe (Doc. #93-2, Exh. 2) provides that Sillitoe is also a Co-CEO of Apax but he works out of the London office and resides in London, England. Neither defendant has ever resided in Florida, owned or leased property in Florida, maintained any records in Florida, owned a business registered with the Florida Department of State, and have never filed suit or been sued in the State of Florida before this suit was filed. Neither have ever attended any meeting of 3M or Attenti.

Setting aside the issue of plaintiff adding counts as to Apax that were not present in the previous pleading, and the issue of adding new parties after the deadline to do so, the Court finds that the motion should be granted because the allegations are insufficient to support personal jurisdiction. "Legal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Even if read in a light most favorable to plaintiff, the Declarations contradict the vague and conclusory allegations in

11

the Fifth Amended Complaint. Plaintiff alleges a conspiracy regarding defective equipment, and the failure to disclose known defects to the electronic monitoring equipment that were concealed. The Declarations clearly state that none of the three defendants have any affiliation with Florida. Apax denies being in the business of electronic monitoring equipment altogether and without some nexus between the offending electronic monitoring equipment and Apax, there can be no personal jurisdiction over this defendant or its CEOs. The allegations that Apax was an "investor/owner" and that 3M sold the company to Apax do not constitute sufficient allegations of a "business or business venture", a tortious act, or anything more than an isolated activity. See Edwards v. Airline Support Group, Inc., 138 So. 3d 1209, 1212 (Fla. 4th DCA 2014) (Noting "that the majority of courts nationwide have found a fraudulent transfer does not constitute a tortious act for purposes of Florida's long-arm statute.").

## IV.

Count X alleges a violation of Florida's Uniform Fraudulent Transfers Act (FUFTA) and Florida's Deceptive and Unfair Trade Practices Act (FDUTPA). Count X was the only count against Apax in the Fourth Amended Complaint, and therefore will be the only count considered in the Fifth Amended Complaint.

"In order to state a FDUTPA claim, a plaintiff 'must allege (1) a deceptive act or unfair trade practice; (2) causation; and

(3) actual damages.'" Dolphin LLC v. WCI Communities, Inc., 715 F.3d 1243, 1250 (11th Cir. 2013)." State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC, 278 F. Supp. 3d 1307, 1326 (S.D. Fla. 2017). A deceptive or unfair trade practice may be shown by *per se* violation or a traditional violation. Id. Plaintiff alleges a violation of Fla. Stat. § 726.105 and 11 U.S.C. § 548 for a fraudulent transfer.

The federal statute, Section 548, is part of the Bankruptcy Code and by its plain language only applies to fraudulent transfers that may be avoided by a U.S. Trustee. 11 U.S.C. § 548(a)(1) ("The trustee may avoid any transfer...."). The state law counterpart, Section 726.105, falls under the Florida Uniform Fraudulent Transfer Act (FUFTA) and "allows creditors to set aside a debtor's transfer of assets to a third party under certain circumstances." Arlan Asset Mgmt., LLC v. A.F.A.B. Contractors, Inc., No. 3:17CV775-MCR/EMT, 2018 WL 6720412, at *4 (N.D. Fla. June 1, 2018). This is not a creditor-debtor relationship and neither statute may be used as a predicate offense under the FDUTPA.

A FDUTPA claim does not necessarily require the violation of a predicate statute. "To establish a traditional FDUTPA violation, plaintiff must show defendants engaged in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." State Farm, 315 F. Supp. 3d at 1300 (citations

13

omitted).  Plaintiff must also demonstrate causation and actual damages.  <u>Feheley v. LAI Games Sales, Inc.</u>, No. 08-23060-CIV, 2009 WL 2474061, at *5 (S.D. Fla. Aug. 11, 2009) (citing <u>Rollins, Inc. v. Butland</u>, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).

"To satisfy the first element, the plaintiff must show that "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." <u>Carriuolo v. Gen. Motors Co.</u>, 823 F.3d 977, 983–84 (11th Cir. 2016) (quoting <u>State, Office of Attorney Gen., Dep't of Legal Affairs v. Commerce Com. Leasing, LLC</u>, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007)).  Plaintiff alleges that Apax was an investor/owner that "advised funds for the purchase of 3M".  (Doc. #84, ¶ 7.)  Plaintiff generally alleges unfair trade practices by Apax as part of a conspiracy with the dismissed defendants for "financial gain and expansion of Attenti Electronic Monitoring" as racketeering activity.  (<u>Id.</u>, ¶ 155.) Plaintiff alleges that he was injured in his business and property in the form of lost compensation and emotional harm as a "direct result" of the predicate acts.  (<u>Id.</u>, ¶ 157.)  The vague allegations of a conspiracy for financial gain do not show how a consumer would be deceived by an investor, nor how an investment would directly harm plaintiff "in his business".  The Fifth Amended Complaint will be dismissed.

Accordingly, it is now

**ORDERED**:

14

1. Defendant Apax Partners LLP's Motion to Dismiss Fifth Amended Complaint (Doc. #87) is **GRANTED** and defendant is **dismissed with prejudice**.

2. Defendant's Apax Co-CEOs Andrew Sillitoe and Mitch Truwit's Motion to Dismiss Fifth Amended Complaint (Doc. #93) is **GRANTED** and the defendants are **dismissed with prejudice**.

3. The Clerk shall enter judgment accordingly, terminate all pending motions and deadlines as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __10th__ day of August 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record